**Affirmed and Opinion Filed August 27, 2019.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01414-CV

### U.S. ANESTHESIA PARTNERS OF TEXAS, P.A., Appellant
### V.
### WHITNEY KELLEY MAHANA, Appellee

**On Appeal from the 193rd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-08272**

## OPINION

Before Justices Bridges, Brown, and Nowell
Opinion by Justice Nowell

This is an interlocutory appeal from an order denying a motion to dismiss under the Texas Citizens Participation Act (TCPA). Whitney Kelley Mahana sued U.S. Anesthesia Partners of Texas, P.A. (USAP) for damages after she was fired from her job as a nurse anesthetist. She alleged claims for breach of contract and intentional infliction of emotional distress (IIED) based in part on text messages she claims were sent by her supervisors to her co-workers stating she tested positive for illegal drugs and was being fired. USAP filed a motion to dismiss and argued that the IIED claim was filed in response to the alleged text messages and those messages were communications in connection with a matter of public concern within the definitions in the TCPA. The trial court denied the motion. We affirm.

BACKGROUND

We take these facts from Mahana's first amended original petition. Mahana is a nurse anesthetist who went to work for USAP's predecessor company in 2013. In 2015, Mahana signed a written employment contract with USAP. The contract was for a one-year term and automatically renewed for one-year periods unless one of the parties gave timely notice of its intent not to renew. The contract contains several provisions for termination of employment, including termination for cause, immediate termination, and termination without cause, all subject to specific conditions set forth in the contract.

Mahana alleged USAP breached the contract in several ways, specifically by requiring her to work excessive hours, at times up to thirty-six hours when she worked on-call shifts. She alleged USAP breached a promise to hire additional personnel to alleviate the excessive hours. The excessive hours and lack of breaks produced inordinate stress and extreme fatigue "which often could be considered as dangerous to both the employee and patients." The stress and fatigue from her working conditions affected Mahana's quality of life to the point where she sought professional assistance and counseling.

On December 21, 2016, Mahana was assigned to work at Heritage Surgical Hospital. Shortly after she arrived that morning, the director of nursing for Heritage demanded she take a drug test due to "wastage of drugs" shown on pharmacy logs. The director told Mahana she would be denied privileges at the hospital if she refused to take the test. Mahana asked if USAP was aware of the demand for a drug test and the threatened loss of privileges if Mahana refused the test. The director stated USAP was aware. Mahana then submitted to the drug test. The test later turned out to be negative for any controlled substances.

Mahana alleged:

> At this time, the supervisor of the Plaintiff in violation of the privacy of the Plaintiff began to text to other employees that the Plaintiff was being removed from her

duties because she had tested positive for opiates and other controlled substances. The Plaintiff at the same time begin [sic] to receive texts and telephone calls from fellow employees and Associates that rumor [sic] of alleged drug abuse and addiction were being spread by her supervisor and other employees of the Defendant and that she was being terminated and had been escorted from the building. As was later shown by the drug test conducted by the Defendant, the Plaintiff did not have any controlled substances in her body other than those prescribed by her treating physician and she had voluntarily left the hospital facility to proceed with another employee of the Defendant to take the voluntary drug test, not being escorted from the building as if she had been abruptly terminated from her employment.

Mahana further alleged that she performed her duties in an "excellent and competent manner." No disciplinary proceedings were filed against her. She also alleged she "was never physically or mentally impaired while performing clinical duties, and never had a complaint filed against [her] for inadequate performance."

After "the accusations of drug use and continued overwork," Mahana took a leave of absence to seek in-patient counseling. She was released to return to work on July 1, 2017. She was terminated in September 2017. She alleged USAP breached the contract by terminating her employment without following the procedures and conditions for termination set out in the contract.

Mahana also alleged a cause of action for IIED. She claimed she "suffered loss of morale, confidence, humiliation, nervousness, and loss of reputation among her friends and fellow workers" and sought damages for those injuries. She alleged the demand for excessive and grueling hours, breach of the promise to hire additional personnel, the circumstances surrounding the demand for a drug test, and the text messages accusing her of taking illegal drugs constituted extreme and outrageous conduct by USAP that caused her damages. Specifically, she alleged:

Within a short time after the Plaintiff submitted to the drug testing by the Defendant, supervisors and other persons known and unknown to the Plaintiff at this time intentionally and with malicious intent began texting that the Plaintiff had tested positive for several illegal drugs and controlled substances and was being fired. The Plaintiff was later shown texts from agents and supervisors of the Defendant alleging she had tested positive for numerous illegal or controlled

–3–

substances when in fact the Plaintiff had tested negative. The said text also stated or implied that the Plaintiff was a "drug addict" and was being terminated for illegal activity.

Referencing the allegations in the text messages, Mahana alleged that USAP's conduct was extreme and outrageous because the results of the tests were unknown at the time and later turned out to be negative. Further, she alleged the conduct was extreme and outrageous

> in light of the fact that the Plaintiff was employed in the medical field of licensure and practice where allegations of illegal or illicit drug use could be particularly damaging to the present and future ability of the Plaintiff to seek, maintain or enhance and promote her career in the [field] of medicine.

USAP moved to dismiss the IIED claim under the TCPA based on these allegations. It argued the IIED claim was based on, related to, or filed in response to USAP's alleged exercise of the right of free speech defined by the TCPA. USAP attached Mahana's first amended petition in support of the motion. In her response to the motion, Mahana argued her claim did not fall within the scope of the TCPA and that her affidavit provided prima facie evidence of her claim. The trial court denied the motion to dismiss without specifying a particular ground.

In a single issue on appeal, USAP asserts Mahana's petition establishes by a preponderance of the evidence that her claim for IIED is based on, relates to, or is in response to USAP's exercise of its right of free speech and Mahana failed to establish a prima facie claim for IIED by clear and specific evidence.

### STANDARD OF REVIEW

The TCPA "protects citizens who petition or speak on matters of public concern from retaliatory lawsuits that seek to intimidate or silence them." *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). That protection comes in the form of a motion to dismiss for "any suit that appears to stifle the defendant's" exercise of those rights. *Id.* Reviewing a TCPA motion to dismiss requires a three-step analysis. *Youngkin v. Hines*, 546 S.W.3d 675, 679–80 (Tex. 2018). Initially the moving party must show by a preponderance of the evidence that the legal action

–4–

against it is based on the movant's exercise of the rights as defined in the TCPA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b). If the movant meets its burden, the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claim. *Id.* § 27.005(c). If the nonmoving party satisfies that requirement, the burden shifts back to the movant to prove each essential element of any valid defenses by a preponderance of the evidence. *Id.* § 27.005(d).

We review de novo the trial court's determinations that the parties met or failed to meet their burdens of proof under section 27.005. *Dallas Morning News, Inc. v. Hall*, No. 17-0637, 2019 WL 2063576, at *5 (Tex. May 10, 2019); *Campbell v. Clark*, 471 S.W.3d 615, 623 (Tex. App.—Dallas 2015, no pet.). We also review de novo questions of statutory construction. *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015) (per curiam).

## DISCUSSION

USAP argues it met its burden of establishing the TCPA applies to Mahana's IIED claim because the text messages she claims were sent by USAP employees are communications made in connection with health and safety and community well-being.

As defined by the TCPA, the "exercise of the right of free speech" is a communication made in connection with a matter of public concern. TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3). A "matter of public concern" includes an issue related to health or safety; environmental, economic, or community well-being; the government; a public official or public figure; or a good, product, or service in the marketplace. *Id.* § 27.001(7).

Private communications made in connection with a matter of public concern fall within the TCPA's definition of the exercise of the right of free speech. *Lippincott*, 462 S.W.3d at 509. Further, the TCPA does not require that communications specifically "mention" a matter of public concern or have more than a "tangential relationship" to such a matter. *ExxonMobil Pipeline Co.*

–5–

*v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017). Rather, the TCPA applies so long as the movant's statements are "in connection with" "issue[s] related to" any of the matters of public concern listed in the statute. *Id.*

The TCPA, however, "has its limits" and not every communication falls under the statute. *In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *4 (Tex. App.—Fort Worth Oct. 25, 2018, orig. proceeding) (mem. op.); *see also Erdner v. Highland Park Emergency Ctr., LLC*, No. 05-18-00654-CV, 2019 WL 2211091, at *4 (Tex. App.—Dallas May 22, 2019, no pet. h.); *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 428 (Tex. App.—Dallas 2019, pet. denied).

USAP relies on *Lippincott* to support its argument that communications claiming a nurse anesthetist tested positive for illegal drugs and is a drug addict were made in connection with an issue related to health and safety. In *Lippincott*, the communications related to whether the nurse "properly provided medical service to patients." *Lippincott*, 462 S.W.3d at 509. The communications included claims that the nurse "failed to provide adequate coverage for pediatric cases," administered a "different narcotic than was ordered prior to pre-op or patient consent being completed," falsified a scrub tech record on multiple occasions, and violated the company's sterile protocol policy. *Id.* at 510. After noting its previous acknowledgment that the provision of medical services by a health care professional constitutes a matter of public concern, the court concluded the communications in *Lippincott* were made in connection with a matter of public concern. *Id.*

Unlike the e-mails in *Lippincott*, the text messages alleged in this case do not address Mahana's job performance or relate to whether she properly provided medical services to patients. The text messages do not state that she used illegal drugs on the job or that her alleged use impacted her job performance. Indeed, she alleged she was never physically or mentally impaired while

performing her clinical duties and that no complaints were filed against her for inadequate performance. The text messages, as alleged in her petition, stated: Mahana was "being removed from her duties because she had tested positive for opiates and other controlled substances"; her supervisor was spreading a rumor of alleged drug abuse and addiction; and she was terminated and escorted from the building. As such, they are not communications related to the provision of medical services by a health care professional.[1]

Further, the alleged messages do not relate to community well-being as opposed to Mahana's well-being. USAP argues that communications about criminal activity are related to community well-being. *See Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (communications calling for criminal charges against person for committing identity theft related to both economic and community well-being); *Watson v. Hardman*, 497 S.W.3d 601, 607 (Tex. App.—Dallas 2016, no pet.) (communications accusing party of stealing charitable funds related to community well-being, specifically members of the public who donated the money and the intended recipients of the funds). However, USAP cites no authority stating that testing positive for drugs is in itself a crime. The status of being a drug addict is not an offense. *See Robinson v. California*, 370 U.S. 660, 666–67 (1962) (holding statute unconstitutional for making addiction to narcotics a crime); *Casias v. State*, 452 S.W.2d 483, 487 (Tex. Crim. App. 1970) (status of being a narcotic addict is not considered a crime); *Martinez v. State*, 373 S.W.2d 246, 247 (Tex. Crim. App. 1963). Considering the pleadings in the light most favorable to Mahana,

---

[1] The dissent argues that any communication about someone in the healthcare industry is a matter of public concern. We cannot agree. In *Lippincott*, after concluding the private communications fell within the TCPA, the supreme court analyzed whether the communications were made in connection with a matter of public concern. *Lippincott*, 462 S.W.3d at 509. It specifically noted that "the emails related to whether Whisenhunt, as a nurse anesthetist, *properly provided medical services to patients*." *Id*. (emphasis added). Acknowledging the court's previous determination that "the provision of medical services by a health care professional constitutes a matter of public concern," the court concluded the communications were made in connection with a matter of public concern. *Id*. at 510 (citing *Neely v. Wilson*, 418 S.W.3d 52, 70 n.12 & 26 (Tex. 2013)). It would have been unnecessary to engage in this analysis if all that was required is for the communication to relate to a healthcare professional.

we cannot conclude the text messages, as alleged, are related to criminal conduct as opposed to the alleged status of drug addiction. *See Dyer*, 573 S.W.3d at 424 (reviewing pleadings and affidavits in light most favorable to non-movant on TCPA motion).

Furthermore, the TCPA does not define community well-being, but the plain meaning of the phrase refers to a group's or society's state of being healthy or happy.[2] Here, the communications did not relate to drug use in the community at large or even within a community of nurses. The communications alleged a specific nurse tested positive for illegal drugs and was fired. Without more, we cannot conclude the communication was made in connection with an issue related to community well-being.

As we explained in *Erdner*, "Construing the statute to denote that all private business discussions are a 'matter of public concern' if the business offers a good, service, or product in the marketplace or is related to health or safety is a potentially absurd result that was not contemplated by the Legislature." *Erdner*, 2019 WL 2211091, at *5 (holding TCPA did not apply to private communications about business dispute over possible formation of emergency health clinics). Similarly, construing private communications about an employee's alleged positive drug test or addiction as a matter of public concern merely because the employee happens to be a nurse is a potentially absurd result that was not contemplated by the Legislature. *See id*. On this record we cannot say that private text messages allegedly asserting Mahana tested positive for illegal drugs, was a drug addict, and was being fired are communications made in connection with an issue related to health or safety or community well-being.

We conclude USAP failed to establish by a preponderance of the evidence that Mahana's

---

[2] *See Community*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. A neighborhood, vicinity, or locality. 2. A society or group of people with similar rights or interests."); *Well-being*, DICTIONARY.COM, https://www.dictionary.com/browse/well-being (last visited Aug. 7, 2019) ("a good or satisfactory condition of existence; a state characterized by health, happiness, and prosperity; welfare"); *Well-being*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1981) (the state of being happy, healthy, or prosperous).

IIED claim was based on, related to, or filed in response to USAP's exercise of the right of free speech.  We overrule USAP's issue.

**CONCLUSION**

Because USAP failed to meet its initial burden under the TCPA, the trial court did not err by denying the motion to dismiss.  We affirm the trial court's order.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

Bridges, J., dissenting.

181414F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

U.S. ANESTHESIA PARTNERS OF
TEXAS, P.A., Appellant

No. 05-18-01414-CV     V.

WHITNEY KELLEY MAHANA, Appellee

On Appeal from the 193rd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-08272.
Opinion delivered by Justice Nowell.
Justices Bridges and Brown participating.

In accordance with this Court's opinion of this date, the trial court's November 1, 2018 order denying motion to dismiss is **AFFIRMED**.

It is **ORDERED** that appellee Whitney Kelley Mahana recover her costs of this appeal from appellant U.S. Anesthesia Partners of Texas, P.A.

Judgment entered this 27th day of August, 2019.